† THURSTON, *Adm'r, versus* LOWDER, *Adm'x.*

By § 23, of c. 120, R. S., it is provided, that no executor or administrator who has given bond and notice of his appointment, according to law, shall be held to answer to the suit of any creditor of the deceased, unless it shall be commenced within four years from the time of his giving bond as aforesaid, excepting in the cases after mentioned.

Moneys collected by an executor, of the United States, for alleged claims of his testator against a foreign government, through the medium of a treaty, are assets in his hands, belonging to the estate.

And where an executor received *such moneys* within four years from his appointment, a part of which was claimed by plaintiff, and that it never was the property of the testator; it was *held*, that an action against the executor therefor, brought after the lapse of four years from his appointment, could not be maintained.

And where a party relies upon an *offer* to prove that the cause of action was fraudulently concealed, as an answer to a plea setting up the limitation bar, such offer, in the report of it to the Court, must *clearly* appear to have embraced all the requirements of the statute in that particular. The time *when* the fraudulent concealment was discovered must not be left in doubt.

ON REPORT from *Nisi Prius*, HATHAWAY, J., presiding.

ASSUMPSIT. The writ in this case was dated Oct. 13, 1851, and contained two counts; one for $5000, and the other for $500, for money in the hands of an executor, alleged to belong to plaintiff's intestate.

The suit was commenced against John Wilkins, executor of the last will and testament of Samuel Lowder, who died during the pendency of the suit, and the defendant, administratrix *de bonis non* of said Lowder's estate, assumed the defence.

The general issue was pleaded, and the statute of limitations relied upon by brief statements.

After a partial hearing of the case, it was agreed that if, in the opinion of the Court, the action was maintainable on the facts offered to be proved, it should stand for trial; otherwise, a nonsuit to be entered.

The plaintiff was duly appointed administrator of the estate of Henry Rider, his intestate, in July, 1832, and Wilkins gave due notice that he had taken out letters testamentary, on September 1st, 1847.

The plaintiff offered to prove that, in 1830, said Rider and Lowder were owners of schooner Topaz, Rider of one, and Lowder of three-fourths; *that* Rider was master, and sailed the vessel on shares, and after paying the wages, and for provisions and supplies, was to receive, in his capacity as master, one half of the gross earnings of the vessel; the other half accruing to said Lowder and himself as owners, according to their interests; *that*, after a voyage to Hayti and several other voyages without returning to her

home port, at Bangor, the vessel was seized, and with all the property on board, including freight money and other proceeds of her voyages, was confiscated, and said Rider murdered by the subjects of the Mexican government; *that* plaintiff and said Wilkins, under the Act of Congress of March 3, 1849, instituted claims before a commission appointed by the United States Government, to carry into effect the treaty with Mexico, the plaintiff claiming one-fourth, and Wilkins, as such executor, three-fourths; *that* it was not known at that time under what terms the said vessel was sailed by Rider, and their award was made according to their ownership of the vessel, viz., $15937,15 to Wilkins, and $5703,66 to plaintiff, which had been paid accordingly to the parties, in May, 1851, with the exception of a portion allowed to Wilkins, to answer a claim made upon it by one William Lowder, under said Act; *that* said awards embraced allowances for outfits and provisions, advanced wages, clothes, watches and wages of the crew, which belonged wholly to said Rider under the contract by which he sailed the vessel.

And so much as was received by said Wilkins on account thereof, and for freights and other earnings of the vessel, which belonged to him as master, was claimed under the count for $5000, in this action.

The plaintiff offered further to prove, that prior to the loss of said vessel, Rider had deposited a quantity of molasses belonging to himself, in Providence, having carried it there in the Topaz, which had been sold by the consignee, and the proceeds, amounting to $469,82, had been paid over to said Lowder in his lifetime; which payment was not known to the plaintiff till about the time of commencing this suit, and he should show that the payment aforesaid had been fraudulently concealed from plaintiff's knowledge till about the time of the commencement of this suit.

This evidence was objected to by defendants, as there was no allegation of that kind in the writ, or counter brief statement.

*Rowe & Bartlett*, for defendant, as to the claim for molasses, relied upon the statute of limitations. The statute bar operated in the lifetime of Lowder. Rider dying before the expiration of six years from the time of payment, the statute, R. S., c. 146, § 13, saves to his administrator a right to commence an action at any time within two years, after administration granted, but not afterwards. This defence was made known in our brief statement, and no new fact to avoid it, was offered to be proved.

By the same section, Lowder being dead, a suit against his executor, in order to avoid the statute bar, must be brought within two years after letters testamentary granted. No suit was brought.

To charge the defendant as executor by a creditor of the testator, the action must be brought within four years from the time of his giving bond. R. S., c. 120, § 23; 32 Maine, 72.

The same statute also bars the rest of this claim. There is no allegation or proof whereby it can be brought within any of the exceptions provided in c. 120.

*Moody*, for plaintiff, argued at length upon the several matters raised by the pleadings. As to the statute bar set up, he maintained that it could not be applied to that part of the claim for the government money, as between the plaintiff's intestate and the defendant's testator, the relation of debtor and creditor did not exist. No debt at the time of Lowder's decease was due to plaintiff's intestate.

To be a creditor of the estate of defendant's testator, that relation must have existed in the testator's lifetime, and without that relation there can be no application of this statute.

As to the claim for molasses, the statute bar attached to that unless the proof offered would take it out of its operation.

The payment of the money to Lowder was fraudulently concealed from plaintiff's knowledge until a short period

Thurston *v.* Lowder.

anterior to this suit. That is an answer to the limitation. R. S., c. 146, § 18.

*Kent*, also for plaintiff, argued other points made in the case, but which the Court found it unnecessary to examine.

RICE, J. — The plaintiff, in his writ, presents his claims against the defendant. One for a sum of money received by John Wilkins, former executor of the estate of Samuel Lowder, from the United States, under a treaty with Mexico, arising from the destruction, by the citizens of the Mexican government, of a vessel and cargo, of which Lowder and the plaintiff's intestate were joint owners. The other, for a sum of money received by Lowder, in his lifetime, being the proceeds of a quantity of molasses sold in Providence, by the consignees of the plaintiff's intestate.

Lowder deceased in 1847. Wilkins was duly appointed and qualified as executor on his estate, in August of that year. The plaintiff commenced this action, Oct. 13, 1851, against Wilkins, executor, who was then in full life.

The defendant, who now defends this suit, as administratrix *de bonis non*, of Lowder, pleads the statute of limitations, relying upon § 23 of c. 120, R. S., which provides, that no executor or administrator, who has given bond and notice of his appointment, according to law, shall be held to answer to the suit of any creditor of the deceased, unless it shall be commenced within four years from the time of his giving bond as aforesaid; except in cases after mentioned.

The plaintiff contends that these statute provisions do not apply to the principal claim in this case, for the reason that the relation of debtor and creditor never existed between himself or his intestate and Lowder; that the claim and right of action originated after the death of Lowder.

Section 24, of c. 120, provides, that when assets shall come to the hands of an executor or administrator, after the expiration of said four years, he shall account for, and apply

the same in like manner as if they had been received within said four years.

Was the money received from the United States, for Mexican spoliation, assets in the hands of the administrator? In *Foster* v. *Fifield*, 20 Pick. 67, this precise question was raised. SHAW, C. J., in delivering the opinion of the Court in that case, says, " the objection taken to this is, that this money, obtained from the king of the Two Sicilies, by means of a treaty made by the government of the United States, was a new acquisition, and not a part of the assets of the intestate's estate. This proposition is not tenable. Fifield received it as administrator, as trustee for all entitled; first, for creditors, and then for distributees or heirs. It is in the nature of a debt due to the intestate, at the time of his decease, but collected afterwards through the medium of the government."

If this doctrine be sound, and we perceive no reason to doubt its correctness, then, in legal contemplation, the parties sustain the same relation to each other that they would have done had Wilkins collected other moneys, or reduced to possession other assets of his testator, in which the plaintiff had an interest, in his representative capacity, within four years after giving bond, as provided in § 23. We also think that the statute bar applies by necessary implication, from the language used in § 24, cited above.

In this case the plaintiff had ample time to ascertain his rights, before the money obtained from the United States went into the hands of the defendant's predecessor. And after the money was received, there was sufficient time within which to commence his suit, before the statute bar attached. If, therefore, rights have been lost, that loss must be attributed to want of proper diligence in the investigation and prosecution of those rights.

The plaintiff was not concluded by the adjudication of the commissioners of the United States, but might have sought a remedy in this Court, had it been seasonably prosecuted. *Mercantile Ins. Co.* v. *Corcoran*, 1 Gray, 75.

The other claim set forth in the plaintiff's writ, is based upon the assumption, that many years ago, (about 1831,) Lowder received a sum of money, which, with the interest thereon, would now amount to five hundred dollars, for a quantity of molasses, sold by the consignees of the plaintiff's intestate, and belonging to him.

To this claim the defendant also interposes the statute of limitations. To avoid this plea, the plaintiff, as appears by the report of the case, stated that he should show that the " payment for the molasses aforesaid, had been fraudulently concealed from the plaintiff's knowledge till about the time of the commencement of this suit."

The defendant objected to the proof, because there was no allegation of the kind in his writ, or counter brief statement. Without deciding whether, under our system of pleading, such evidence could be offered by the plaintiff, without pertinent allegations in his pleadings, it is clear that the proof here offered is not sufficient to take this case out of the operation of the statute of limitations.

The offer is indefinite as to the time when the alleged fraudulent concealment was discovered. It may have been before the expiration of the four years after Wilkins gave bond as executor. If so, the claim would be barred. Nor does it appear by whom the concealment was practiced, nor that any diligence had been used to discover the fraud. Still further, it is very difficult to perceive how such a fraudulent concealment as the statute contemplates could have been practiced under the circumstances of this case. Certain it is, that to entitle the plaintiff to a hearing, the proof offered should, if produced, have brought his case clearly within the provisions of the statute. This it wholly fails to do. A replication, setting out the same facts which the plaintiff offered to prove would be adjudged bad on demurrer.

There were other matters discussed in the arguments of counsel which it is not necessary to consider, as it is apparent from what has already been said, that the action cannot be maintained.  *Plaintiff nonsuit.*